# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2224

_____

United States of America

*Plaintiff - Appellee*

v.

Quantez Cribbs

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: May 10, 2021
Filed: August 6, 2021
[Unpublished]

_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

_____

PER CURIAM.

Quantez Cribbs appeals the district court's[1] denial of his motion to reduce his 278-month sentence under the First Step Act of 2018 (FSA), Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. Cribbs argues that the district court erred in enforcing a waiver contained in his plea agreement and abused its discretion in declining to reduce his sentence. We affirm.

## I. *Background*

Cribbs pleaded guilty pursuant to a written plea agreement to possession with intent to distribute crack cocaine near a playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 851, and 860. The plea agreement relinquished specified rights "in order . . . to avoid trial[] and to have [Cribbs's] case finally concluded." Plea Agreement ¶ 34, *United States v. Cribbs*, No. 2:08-cr-01320-CJW-MAR (N.D. Iowa 2008), ECF No. 27-1. The government gave up its right to file multiple notices under 21 U.S.C. § 851 and, thereby, seek an enhanced sentence of mandatory life imprisonment. Cribbs, among other things, gave up his right to put the government to its burden at trial; the right to appeal his conviction and sentence; and "the right to file post-conviction relief actions, including actions pursuant to 28 U.S.C. §§ 2255 and 2241, *coram nobis* actions and motions to reconsider or reduce [his] sentence." *Id.* The waiver provision of the plea agreement concluded, "The waivers set out above relate to any issues which now exist or which may arise in the future." *Id.*

Prior to sentencing, a presentence investigation report (PSR) was prepared. It attributed 577.63 grams of crack cocaine and 531.56 grams of powder cocaine to Cribbs. The PSR reported a total offense level of 34 and a criminal history category of VI. It calculated Cribbs's Guidelines range as 262 months to 327 months' imprisonment, with a statutory range of ten years to life. At sentencing, the district

---

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

court accepted the PSR's Guidelines range calculation and sentenced Cribbs to 278 months' imprisonment.[2]

The FSA became law on December 21, 2018, and "made retroactive the lower penalties for cocaine base offenses established by the Fair Sentencing Act [of 2010]." *United States v. McDonald*, 944 F.3d 769, 771 (8th Cir. 2019).

After the FSA's passage, Cribbs moved the district court to reduce his sentence under the FSA.[3] "A district court must engage in a two-step process in determining whether to grant a motion for a reduced sentence under Section 404 of the Act." *United States v. Cosey*, 845 F. App'x 487, 488 (8th Cir. 2021) (unpublished per curiam) (citing *McDonald*, 944 F.3d at 772). Under the first step, "the court must decide whether the defendant is eligible for relief under § 404." *McDonald*, 944 F.3d at 772. If the district court determines that the defendant is eligible for relief, then, under the second step, "the court must decide, in its discretion, whether to grant a reduction." *Id.*

Before the district court, "[t]he parties agree[d] that [Cribbs] [was] eligible for relief because he was convicted of a crack cocaine offense before 2010, and his sentencing guideline range would have changed if the Fair Sentencing Act had been in effect at the time of the charged offense." Order at 3, *United States v. Cribbs*, No. 2:08-cr-01320-CJW-MAR (N.D. Iowa 2020), ECF No. 92. The court likewise concluded that Cribbs "committed a covered offense and [was] potentially eligible for relief pursuant to section 404 of the FSA." *Id.*

---

[2]Subsequently, in 2012 and 2015, the district court denied Cribbs's motions for a sentence reduction based on his career-offender status.

[3]Cribbs first filed a pro se motion to reduce his sentence under the FSA. The court thereafter appointed counsel to represent Cribbs. Counsel filed an amended motion to reduce Cribbs's sentence under the FSA.

Despite Cribbs's statutory eligibility for relief under the FSA, the government argued that his request was barred by his plea agreement because Cribbs "waive[d] the right to file post-conviction relief actions, including . . . motions to reconsider or reduce [his] sentence." Plea Agreement ¶ 34. Alternatively, the government argued that Cribbs's history and characteristics weighed against the district court granting Cribbs's motion to reduce his sentence.

The district court denied Cribbs's motion to reduce his sentence under the FSA. The district court enforced the plea waiver contained in Cribbs's plea agreement and denied the motion. "In the alternative, the court exercise[d] its discretion and denie[d] [Cribbs's] motion to reduce his sentence after a careful analysis of each and every factor at 18 U.S.C. § 3553(a)." Order at 5. The court denied the motion after considering "the case file; the parties' briefs, arguments, and exhibits; [Cribbs's] history while in the BOP [Bureau of Prisons]; the uncontested portions of the PS[]R; and the plea agreement." *Id.* The court found that "[t]he nature and circumstances of the offense of conviction and [Cribbs's] case file and characteristics constitute[d] aggravating factors that [were] not overcome by the mitigating factors set forth by [Cribbs]." *Id.* Specifically, the court noted Cribbs's involvement in distributing "over 577 grams of crack cocaine near a protected location," his "ten prior convictions for distribution of crack or powder cocaine," and the government's agreement "to forego the filing of the § 851 notices," resulting in Cribbs receiving "a relatively low sentence of 278 months in prison considering his criminal history." *Id.* at 5–6.

The court highlighted Cribbs's long history of criminal behavior; in addition to the drug-distribution offenses, Cribbs "committed the offenses of robbery, armed robbery, burglary of residence, battery, domestic abuse assault, and two violations of a no contact order relating to the domestic assault." *Id.* at 6. The court also pointed out that Cribbs "did not receive criminal history points" for "many of his more serious felony convictions." *Id.* In light of his criminal history, the court found that a high

likelihood existed that Cribbs would "engage in criminal behavior once he is released from prison." *Id.* "His history suggests a tendency toward violent behavior and a lack of respect for the law, including court orders," the court explained. *Id.* The court additionally highlighted Cribbs's poor performance while under correctional supervision.

Finally, the court discussed Cribbs's record while in the BOP. The court did acknowledge that Cribbs had "taken over fifteen courses during the last ten years" while in prison and commended Cribbs for doing so. *Id.* But the court also noted that Cribbs "had numerous minor infractions" in prison. *Id.*

## II. *Discussion*

Cribbs challenges the district court's denial of his motion to reduce his sentence under the FSA, arguing that it erred in enforcing the plea waiver and otherwise abused its discretion in declining to reduce his sentence.

For purposes of this appeal, we will assume, without deciding, that Cribbs's appeal is not barred by the plea waiver. Nonetheless, we hold that the district court did not abuse its discretion in denying Cribbs's motion to reduce his sentence under the FSA. *See Cosey*, 845 F. App'x at 488 ("We review de novo a district court's determination of a defendant's eligibility under the [FSA]; we review for an abuse of discretion a district court's decision whether to grant a reduction under the [FSA]." (citing *McDonald*, 944 F.3d at 771)).

Cribbs argues that "the record does not support a conclusion that the district court considered all relevant factors that were brought to its attention, including the scope of [his] post-conviction rehabilitation, in making its discretionary decision." Appellant's Br. at 19.

"When reviewing a section 404 petition, a district court may, but need not, consider the section 3553 factors." *United States v. Moore*, 963 F.3d 725, 728–29 (8th Cir. 2020), *cert. denied*, —— U.S. ——, 141 S. Ct. 1118, 208 L. Ed. 2d 560 (2021). "This is particularly true when, like here, the sentencing court also reviews the § 404 motion, because the court is 'uniquely positioned to consider the many factors necessary in exercising its ultimate discretion.'" *United States v. Davis*, 832 F. App'x 458, 460 (8th Cir. 2020) (unpublished per curiam) (quoting *United States v. Howard*, 962 F.3d 1013, 1015 (8th Cir. 2020)).

In determining whether a district court conducted a "complete review" under Section 404, we review the record to see if the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Booker*, 974 F.3d 869, 871 (8th Cir. 2020) (quoting *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007)). But a district court need not respond to every argument that the defendant raises. *United States v. Sherman*, 960 F.3d 978, 982 (8th Cir. 2020). "We presume the district court considered [the defendant's] arguments before making its sentencing determination . . . ." *Davis*, 832 F. App'x at 460.

*Cosey*, 845 F. App'x at 488–89 (alterations in original).

Having reviewed the record, "[w]e are satisfied that the district court conducted a complete review of [Cribb's] Section 404 motion." *Id.* at 489. First, the district court expressly stated that it had considered all of the parties' arguments and carefully analyzed the § 3553(a) factors. Second, the court explained why it considered the nature and circumstances of Cribbs's offense and his criminal history to be aggravating factors weighing against the grant of Cribbs's motion to reduce his sentence. Finally, "[t]he district court was the original sentencing court and thus was uniquely positioned to consider the many factors necessary in exercising its ultimate discretion. The court's plain statement regarding its decision not to exercise its

-6-

discretion under the First Step Act in this case closes the matter." *Id.* (quoting *Howard*, 962 F.3d at 1015).

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____